UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 07-80185 CIV-RYSKAMP/VITUNAC

PROVIDE COMMERCE, INC.,

a Delaware corporation,

        Plaintiff,

   v.

PREFERRED COMMERCE, INC.,

a Delaware corporation,

        Defendant.

_____/

**ORDER PARTIALLY GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION**

THIS CAUSE comes before the Court upon defendant's motion for summary judgement **[DE 57]** filed on February 18, 2008. Plaintiff responded **[DE 73]** on March 6, 2008. Defendant replied **[DE 93]** on March 17, 2008. This Court held a hearing on March 21, 2008. The motion is now ripe for adjudication.

**I. Introduction**

This is an action alleging violations of the Lanham Act for trademark infringement, unfair competition and false designation of origin. Plaintiff also alleges both federal and state causes of action for trademark dilution, one count of federal cybersquatting, and one count of common law trademark infringement and unfair competition. As such, the action is properly brought before this Court pursuant to its federal question and supplemental jurisdiction.

Both plaintiff and defendant operate businesses involving the horticulture, floriculture and agriculture industries. Both companies offer their goods and services through their respective internet websites   Plaintiff filed this action because of the alleged similarity of the

parties businesses and business names.

**Provide Commerce Inc.**

Plaintiff began conducting business as Proflowers in 1998. It changed its mark and domain name to Provide Commerce Inc. on September 22, 2003. It owns two websites named providecommerce.com and proflowers.com and conducts an online business that delivers fresh, high-quality products direct from the supplier in interstate commerce. Plaintiff enjoys a customer base of over five million users worldwide. Plaintiff alleges that it has a sizable share of the online flower market, has achieved a high level of brand recognition and is respected by customers, suppliers, growers and nurseries.

Plaintiff filed for a U.S. Trademark Application (Ser. No. 78/298,634) on September 10, 2003. Plaintiff sought to register the Provide Commerce mark for use in connection with "mail order and online retail store services featuring flowers, plants and bulbs, dried fruit, cakes, candies and pastries, fresh produce, meats, seafood and cheese."

Plaintiff alleges that its success is due to its advertising and promotion of the Provide Commerce mark. As such, plaintiff has used multiple types of media to promote its business. The Provide Commerce name acts as an umbrella over all of Provide's brand names. As such, Provide Commerce appears on all promotional materials and on company letterhead, business cards, envelopes and websites. As a result of these efforts, plaintiff alleges that its name has become famous and that the company has established good will and a good reputation with respect to its services.

**Preferred Commerce**

Defendant was conducting business under the name Plantfind.com, Inc. until about November 1, 2004, when it changed its name to Preferred Commerce, Inc. Defendant operates

two websites that offer slightly different services within the horticultural and gardening markets. Learn2Grow is an educational website offering online classes for individuals to improve their horticulture skills. PlantFind is a networking site designed to facilitate introductions between businesses for the wholesale distribution of horticulture and floraculture products.

On April 18, 2006, defendant filed two U.S. Trademark Applications (Ser. Nos. 78/863,437 and 78/863,434) for use with a website featuring "information and customizable content for home gardeners and consumers" and "to provide online educational services, namely, providing online courses related to eLearning and business-to-business transactions, by utilizing content development applications, learning management programs and best industry practices, in the fields of horticulture and gardening."

Plaintiff alleges that defendant intentionally changed its name knowing that plaintiff operated a business under the name of Provide Commerce. Plaintiff alleges that defendant chose a name that was substantially similar to plaintiff's name to create confusion regarding defendant's affiliation with plaintiff and to trade on the good will, reputation and fame of plaintiff's mark because of the popularity of plaintiff's mark.

Plaintiff alleges that confusion is likely as to the source of defendant's services and whether plaintiff endorses or approves of defendant or its services, since both companies provide similar services, have similar names, market to a similar customer base and use the same channels of trade. Plaintiff argues that defendant's acts have diluted plaintiff's mark.

Plaintiff never consented to defendant's use of the mark and sent a cease and desist letter to defendant. The Parties engaged in discussions to attempt to resolve the dispute but were unable to come to a compromise. Thus, plaintiff filed the instant lawsuit.

**II.     Discussion**

   **A.     Summary Judgment Standard**

A party is entitled to judgment as a matter of law when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment should be entered only when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983). Summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in favor of the non-moving party.  *HCA Health Services of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001).  The non-moving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).  The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment.  *See Celotex*, 477 U.S. at 322.

   **B.     Trademark Claims**

A plaintiff must prove the priority of its mark and a likelihood of consumer confusion between its mark and a defendant's mark. *Carnival Brand Seafood Co. v. Carnival Brands, Inc.*,

187 F.3d 1307, 1309 (11th Cir. 1999). It appears from the record that the parties agree that plaintiff is the senior user. Thus, this Court focuses on the likelihood of confusion prong and concludes that material issues of fact exist and that its motion for summary judgement must be denied. *See*, *Carnival* at 1311 n. 4 (once priority of a mark is established, a court must then apply the "likelihood of confusion test, as of the current time and as between the plaintiff's current products ... and the allegedly infringing products of the defendant ... ").

Courts must consider seven factors when determining the likelihood of confusion: (1) the type of mark; (2) the similarity of the two marks; (3) the similarity of the goods; (4) the identity of customers and similarity of retail outlets, also know as the similarity of trade channels; (5) the similarity of advertising; (6) whether the defendant acted in bad faith; and (7) evidence of actual confusion. *Carnival* at 1311-12. As defendant notes in its summary judgment motion, the likelihood of confusion is often a jury question, although summary judgement can be appropriate in some circumstances. *Alliance Metals, Inc. of Atlanta v. Hinely Industries, Inc.*, 222 F.3d 895, 907 (11th Cir. 2000); *citing*, *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514-15 (11th Cir. 1984).

The crux of the factual dispute centers on the second prong of the likelihood of confusion test. The parties disagree whether the terms are similar and use different techniques of grammatical analysis to advocate its respective position. The similarity and order of the letters appearing in each word, the similarity of the sound of each word and the similarity of the appearance of each mark, are issues for a jury to determine. Although the parties do agree that each word has a different meaning and are used in different parts of speech, one is an verb while the other is an adjective, this agreement is not enough to foreclose the necessity of a jury trial.

Further factual disputes arise when discussing the third, fourth and sixth prongs of the

test. Particularly to defendant's alleged bad faith, prong six. Plaintiff argues that the timing of defendant's name change shows bad faith, whereas defendant has provided this Court with testimony arguing that its name change had nothing to do with plaintiff. To determine bad faith, this Court would have to consider one party's evidence more credible than the other. Credibility determinations, of course, are within the sole province of the jury.

**C.     Cybersquatting and Common Law Trademark Infringement**

Defendant properly argues that the likelihood of confusion test is also applied in determining defendant's liability in counts four and five. Thus, a jury determination is also necessary as to those counts.

**D.     Dilution**

Counts two and three allege federal and state causes of action for trademark dilution. This Circuit held in *Carnival* that both the Federal and Florida state causes of action for dilution involve the same principles. *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F.Supp.2d 1261, 1271 n. 6 (S.D. Fla. 1999). Dilution is an extraordinary remedy reserved for only a small class of elite marks. As such, this Court concludes that plaintiff's mark is not famous and, therefore, the motion must be granted as to counts two and three.

Dilution of a trademark occurs where companies produce different goods or services and where there is no likelihood of consumer confusion between the two marks. Thus, the inquiry is different from that used in the likelihood of confusion test. Here, a party's theory of recovery is that the public associates the same mark with the two entitles and that association infringes on the senior user's property right by preventing the mark to serve as a unique identifier of the senior user alone. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24.72 (4th ed.). "A dilution action ... is based on the concept that a strong trademark has value beyond its

ability to distinguish a good or service's source. A dilution action protects the owners of such strong, distinctive marks from the diminution of consumer goodwill by competitors or non-competitors." *Carnival Corp.* at 1269. Thus, dilution occurs where the trademark is blurred by the junior use or where the junior use damages the good associations originally attributed to the senior user. *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 426 (2003).

A party is entitled to injunctive relief if they own a famous mark that is distinctive and another entity uses that trademark or name in commerce causing blurring or tarnishing of the mark. 15 U.S.C. § 1125(c)(1). To prove dilution, plaintiff must show sufficient evidence that (1) its mark is famous; (2) that defendant began to use its mark after it had become famous; (3) that defendant's use of the mark has likely caused dilution; and (4) that defendant's use is commercial and in commerce. 15 U.S.C. §1125(c)(1) (after the 2006 amendments to the statute, plaintiff need only prove likelihood of dilution rather than actual dilution); *Carnival Corp.* at 1269. Since this Court, as will be explained below, concludes that plaintiff's mark is not famous, the remaining elements will not be discussed.

A mark is famous if the general consuming public recognizes the mark's owner as the source of the goods and services it produces. *Id*. Courts must consider all relevant factors when determining whether the public adequately recognizes a mark including:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii) The extent of actual recognition of the mark
> (iv) Whether the mark was registered [with the trademark office].

15 U.S.C. § 1125(c)(2)(A)(i)-(iv).[1]  Mere distinctiveness alone is not sufficient to prove that a mark is famous.  *Carnival Corp*. at 1269.  To be famous, "a mark must have a degree of distinctiveness and 'strength' beyond that needed to serve as a trademark ... [it] must be 'truly prominent and renowned.'" *Id* at 1270.  A trademark is protected from dilution when it is *especially* famous and distinctive.  *Michael Caruso and Co., Inc. v Estefan Enterprises, Inc.*, 994 F.Supp. 1454, 1463 (S.D. Fla. 1988)(emphasis added).  "Even if a mark is distinctive in its particular market, it does not render it inherently distinctive so as to engender immediate recognition in the general public of a particular product.  *Id*.  Examples of famous marks include Exxon, Kodak, Coca-Cola, Pepsi, Buick, Wal-Mart, DuPont and Budweiser.  *Golden Bear Intern., Inc. v. Bear U.S.A., Inc.*, 969 F.Supp. 742, 749 (N.D. Ga. 1996); *Pepsico, Inc. v. #1 Wholesale, LLC*, WL 2142294 * 4 (N.D. Ga. 2007); *Smith v. Wal-Mart Stores, Inc.*, 475 F.Supp.2d 1318, 1323 (N.D. Ga. 2007); *Carnival Corp* at 1270 (finding that the trademark Carnival is famous, the term Fun Ship is not); *Anheuser-Busch, Inc. v. Major Mud & Chemical Co.*, 221 U.S.P.Q. 1191 (T.T.A.B. 1984); McCarthy, § 24:72 at 24-144.

Plaintiff points to its extensive national advertising efforts, its large customer base and its profits to support its claim that the Provide Commerce mark is famous.  This is simply not enough to meet the rigorous dilution standard.  The types of marks that are afforded protection under this statute rise to the level of household names.  Plaintiff's mark simply does not meet that standard.

---

[1] Plaintiff alleges dilution under both Federal and State law.  Federal statutes require a plaintiff to show that its mark is famous.  State courts, however, require a plaintiff to prove that its mark is distinctive.  Both Federal and State law apply many of the same factors to determine whether a mark is famous/distinctive.  *Carnival Corp.* at 1271 n.7.

Moreover, even assuming that plaintiff's mark is famous, defendant must have began using the alleged diluting mark after plaintiff's mark became famous. The record shows that plaintiff began using the Provide Commerce name about fourteen months before defendant began using the Preferred Commerce name. Plaintiff, however, has never articulated when exactly its mark became famous. To prevail on a dilution claim, a plaintiff must prove when its mark achieved fame. McCarthy § 24:103. Thus, although defendant began using the Provide Commerce mark just over a year after plaintiff began to use the Provide Commerce mark, the relevant date is when plaintiff's mark became famous. Plaintiff has failed to make that showing and its claim must be denied.

### III.  Conclusion

ORDERED AND ADJUDGED that:

(1) Defendant's Motion for Summary Judgment **[DE 57]** is PARTIALLY GRANTED;

(2) The Motion is GRANTED as to counts II and III and DENIED as to counts I, IV and V.

(3) Plaintiff's Motion to Strike **[DE 72, 110]** is DENIED as MOOT;

(4) Plaintiff's Motion to Vacate **[DE 112]** is DENIED; and

(5) Plaintiff's Motion to File Leave to Supplement **[DE 101]** is DENIED as MOOT.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 3 day of April, 2008.

/s/ Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Copies to: all counsel of record